IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

   Plaintiff,

 v.

MEGAN COLLINS,

   Defendant.

_____/

NO.  CR. S-09-0248 DAD

ORDER RE DEFENDANT'S MOTION
TO SUPPRESS EVIDENCE

**INTRODUCTION**

On October 5, 2009, the court held an evidentiary hearing on the motion to suppress evidence filed in the above-entitled action on behalf of defendant Megan Collins.[1] Colleen Villarreal, Certified Law Student, appeared on behalf of the United States, Caitlin Howard and

/////

---

[1] Counsel on behalf of defendant Collins initially filed the motion to suppress evidence on August 11, 2009, noticing the motion for hearing on September 15, 2009. (Doc. No. 7.) At the September 15, 2009, hearing the court provided counsel with its preliminary thoughts regarding the issues presented by the motion and granted the defendant's request for an evidentiary hearing.

1

Grant Zehnder, Certified Law Students, of the Federal Defender's Office appeared on behalf of defendant Collins.

**FACTS**

The defendant is charged in this misdemeanor action with possession of morphine at the Tracy Defense Depot on April 14, 2009, in violation of 21 U.S.C. § 844(a). The charge stems from the search of the defendant's vehicle just after she arrived at the Main Gate of Tracy Defense Depot(hereinafter "Depot"). The facts surrounding the incident are substantially undisputed.[2]

On the day in question defendant Collins, accompanied by her passenger Michael Bennett, was driving her vehicle to the Deuel Vocational Institution (DVI) which is located very near the Depot. Ms. Collins mistakenly drove past DVI and made a turn that caused her to approach the Main Gate of the Depot. At the gate, Collins asked Department of Defense (DOD) Officer Jerry Formby whether she was at the entrance to DVI. Formby told she was not and asked if Ms. Collins would like directions to DVI, which he could provide. When Collins indicated that she would appreciate directions, Formby instructed her to pull into a parking area inside the gate so he could provide them to her. Officer Formby also asked for the driver's licenses of both Ms. Collins and Mr. Bennett, and had his dispatch run a CLETS check on

/////

/////

---

[2] To the extent any materials facts are disputed by the parties, this statement of facts represents the court's factual findings based upon the evidence received at the hearing on the motion.

both.[3]  When the CLETS check was run, it was reported to Formby that the passenger, Mr. Bennett, had an outstanding arrest warrant for drug possession and assault.

Officer Formby then contacted DOD Sgt. Derrick Marriana for assistance, advising him of Bennett's outstanding warrant.  Formby arrested Bennett, handcuffed him and placed him in the back of Sgt. Marriana's vehicle.  Sgt. Marriana then approached defendant Collins, stating that he would need to search her vehicle and that she should exit her vehicle.[4]  Defendant Collins cooperated by doing so.  During his search of the interior of the vehicle, Sgt. Marriana opened the defendant's purse which had been left on the front seat of the car.  Inside the purse he found an Excedrin pill bottle which he opened.  Sgt. Marriana viewed Excedrin tablets inside the bottle along with three other pills that appeared to him to be prescription medication.  When confronted by Sgt. Marriana with this discovery, defendant Collins admitted that the tablets were morphine, that she did not have

/////

/////

/////

---

[3] According to Formby, signs approaching the gate warn visitors that there is a 100% I.D. check policy at the Depot and he adheres to that policy.

[4] To the extent that Officer Formby testified that he believed that he overheard Sgt. Marriana request consent to search the vehicle and that defendant Collins consented, the court rejects that testimony.  Sgt. Marriana was the officer who interacted with the defendant and, according to Sgt. Marriana's credible testimony, he informed the defendant that he would have to search her vehicle and that she was fully cooperative when he instructed her to exit the car and step aside.

a prescription for them and that she had taken them from her mother who had a prescription.[5]

Thereafter, defendant Collins was handcuffed and placed in the back of a patrol car.  She was told that she was going to be cited for unlawful possession of prescription medication.  After she was searched by a female officer inside the Depot security station, she was cited and released.

The defendant moves to suppress all evidence seized, including her statements to the officers, on the grounds that: (1) the stop of her vehicle was not based on reasonable suspicion and was therefore unlawful; (2) the search of her car and purse was unreasonable because she was not seeking to enter the Depot but rather looking for DVI; (3) the search was not justified as incident to Bennett's arrest; and (3) her statement to the officers was obtained in violation of the Fifth Amendment.

In opposing the motion to suppress initially the government took the positions that: (1) the initial stop of the vehicle at the Depot's main gate was a reasonable checkpoint stop; (2) once the defendant drove her vehicle onto the Depot, whatever her purpose, she impliedly consented to a search of the vehicle; and (3) the search of defendant's vehicle, and the purse within, was a reasonable search justified as being incident to Bennett's arrest.

/////

---

[5] One of the three pills was old, discolored and could not be identified, but the other two tablets were identified by Sgt. Marriana, after consulting a Physician's Desk Reference, as morphine.

4

**ANALYSIS**

At the outset, the court rejects the government's argument that the search of the defendant's vehicle, and her purse located therein, was justified as a search incident to the arrest of her passenger, Mr. Bennett. As established by the officers' testimony at the evidentiary hearing, Bennett had been handcuffed and placed in the back of a patrol car before Sgt. Marriana began to search defendant's vehicle. Bennett was clearly not within reaching distance of the car at the time of its search. Moreover, there was no reason to believe that evidence relevant to the crimes for which Bennett was arrested would be found in defendant Collins' vehicle.[6] Thus, the search of the vehicle was clearly not justified as a search incident to Bennett's arrest. Arizona v. Gant, __U.S.__, 129 S. Ct. 1710, 1719 (2009) United States v. Ruckles, 586 F.3d 713, 715, 717-18 (9th Cir. 2009). Moreover, in light of Sgt. Marriana's credible testimony that he informed defendant Collins that he would need to search her car and that she should exit the vehicle, this was obviously not a consent search.

On the other hand, the court rejects the defense contention that the stop of Collins' vehicle at the Depot's Main Gate was not based on reasonable suspicion and was therefore unlawful. Once the vehicle driven by defendant Collins approached the Main Gate of the Depot it was on military base property and could be stopped by DOD officers without cause. See United States v. Hawkins, 249 F.3d 867,

---

[6] Bennett was arrested on outstanding warrants from San Joaquin County for assault and simple drug possession.

875 (9th Cir. 2001) ("The Government's interest in maintaining national security and promoting public safety on base roadways outweighed the brief and limited intrusion resulting from stopping Hawkins at the Peacekeeper gate."); United States v. Green, 293 F.3d 855, 861 (5th Cir.) ("The conduct of the military police in this case reaches no farther than those state license checkpoints that have passed constitutional muster in a number of circuits."), cert. denied 537 U.S. 966 (2002).

But these conclusions do not dispose of the pending motion. As the court has observed at the prior hearings in this action, the central issue presented is whether defendant Collins impliedly consented to the search of her vehicle by entering the Depot or whether any such implied consent was vitiated when she made it clear to officers that she was lost, had mistakenly approached the main gate thinking it was DVI and did not wish to visit the base. For the reasons set forth below, the court concludes that implied consent was not present under the unusual facts of this case.

In Morgan v. United States, 323 F.3d 776, 778 (9th Cir. 2003), the court was called upon to decide as a matter of first impression whether "a warrantless search of a person seeking to enter a military base may be deemed reasonable based upon the implied consent of the person searched." The Ninth Circuit joined the Fourth and Fifth Circuits and held that a person "may" impliedly consent to a search on a military base. 323 F.3d at 782. However, the court also stated that "the probable cause requirement is only obviated if the
/////

6

defendant impliedly consented to the search" and remanded the case for further proceedings to develop a more complete factual record. Id.[7]

In the Fifth Circuit decision, referred to in Morgan, the court had held that the search of the defendant's vehicle was reasonable because the defendant had impliedly consented to have his vehicle searched when he entered the military base. United States v. Ellis, 547 F.2d 863, 866 (5th Cir. 1977). The court in Ellis concluded that the defendant "certainly should have realized that his actions in presenting his vehicle to the guard at the entrance to the Air Station with an implied request to drive aboard carried the possibility of an inspection then and there." 547 F.2d at 866. Finally, the court relied upon the fact that the defendant's entry and stay on the base was specifically conditioned upon his consent to search according to the terms of the visitor's pass he was issued and which he admittedly reviewed and displayed on his windshield. Id.

In the Fourth Circuit case referred to in Morgan, the defendant had been charged with attempted murder and use of a firearm in connection with a felony stemming from his apparent attempt to murder his wife at her place of work, Andrews Air Force Base. United States v. Jenkins, 986 F.2d 76 (4th Cir. 1993). The court in Jenkins determined that the defendant's car (where officers located a .357

/////

---

[7] The Ninth Circuit in Morgan noted that military bases often warn of the possibility of search as a condition of entry which may result in implied consent to search by those seeking to enter but that the record needed further development to determine whether implied consent was present in the case before it. 323 F.3d at 778.

1  magnum, ammunition and a murder/suicide note) was subject to
2  warrantless search based on the following reasoning:

> The barbed-wire fence, the security guards at the gate, the sign warning of the possibility of search, and a civilian's common-sense awareness of the nature of a military base - all these circumstances combine to puncture any reasonable expectation of privacy for a civilian who enters a closed military base.

986 F.3d at 79.

The question here then is whether under the facts of this case, as set forth above, defendant Collins impliedly consented to the search of her car, thereby obviating the probable cause requirement. See Morgan, 323 F.3d at 782.

The court finds the decision in United States v. Miles, 480 F.2d 1217 (9th Cir. 1973) to be particularly instructive here. In that case the court concluded that where the driver of a moving van sought to drive into a restricted area of a military base and his van was searched by an army security officer with the driver's permission and pursuant to army regulation, probable cause was not required and the search was lawful. In so holding, however, the Ninth Circuit observed:

> As we noted . . ., since the need to exclude dangerous materials could not justify the search of one who no longer sought to enter, the individual's right to avoid the search by electing not to seek access to the restricted area must be recognized.

480 F.2d at 1219. See also United States v. Lester, 148 F. Supp. 2d 597, 602 (D. Md. 2001) (citing the decision in Miles for the proposition that searches required as a condition of entrance to a

8

secure area of a military base are reasonable as long as individuals are given the option of avoiding the search by electing not to seek entry).

Of course, it is the prosecution that bears the burden of justifying a warrantless search. United States v. Davis, 332 F.3d 1163, 1168, n.3 (9th Cir. 2003) United States v. Johnson, 936 F.2d 1082, 1084 (9th Cir. 1991)  Here, there was no testimony at the evidentiary hearing establishing that signs outside the Depot Main Gate warned visitors that they were subject to search without cause. See Jenkins, 986 F.2d at 79 (court finding implied consent at least in part due to the presence of signs warning of the possibility of search).  Defendant Collins was not issued a visitors pass that conditioned her entry into the Depot upon her consent to search. See Ellis, 547 F.2d at 866.

Most importantly, defendant Collins was not given the option of avoiding the search of her vehicle by electing not to seek entry, even though she made it clear that she did not wish to visit the Depot but, rather, had entered mistakenly.  See Miles, 480 F.2d at 1219; Lester, 148 F. Supp. 2d at 602.  As Officer Formby eventually acknowledged in his testimony, once defendant Collins mistakenly turned off the road to approach the Depot's Main Gate (believing she was turning into DVI) she could not legally turn around.  Rather, barriers prevented her from doing anything except proceeding to the Main Gate where Formby was stationed.  Moreover, Formby conceded that whether or not she had accepted his offer of directions to DVI, once Collins arrived at the Main Gate, he intended to search her vehicle.

1  Finally, Formby agreed that from the outset defendant Collins made it
2  clear that she did not desire to visit the Depot but rather wished to
3  get directions and proceed to her destination, DVI.
4        Here, defendant Collins' own actions vitiated any
5  possibility of her implied consent to a search based on the mere fact
6  that she was directed to pass the Main Gate before her planned
7  immediate departure.  The officers knew that she was not a "visitor"
8  to the Depot in the true sense of the word.  A rule of reason must be
9  employed with respect to exceptions to the warrant requirement.
10 Morgan, 323 F.3d at 781; United States v. Gallock, Cr. No. S-07-0309
11 GGH, 2007 WL 4126071, at *1 (E.D. Cal. Nov. 20, 2007).  Here, reason
12 compels the conclusion that Collins did not impliedly consent to the
13 search of her vehicle by making a wrong turn that required her to
14 approach the Depot's Main Gate.[8]  Without implied consent, the
15 warrantless search was unlawful.  Therefore, all evidence seized as a
16 result of the search, including the defendant's statements when
17 confronted with the evidence seized, must be suppressed.
18 /////
19 /////

---

[8] At the evidentiary hearing the government argued that gate officers cannot merely accept a visitor's explanation such as that provided here.  Counsel contended that terrorists or others could simply lie to gain entry to closed military facilities while avoiding inspection.  The argument ignores the fact that the gate officer is standing next to the vehicle and can watch it turn around and exit the base.  If it does not, officers will stop the vehicle and take appropriate action, just as they would in the case of someone they direct to the parking area for inspection who fails to follow their directions.  For these common sense reasons, the court rejects the government's argument in this regard.

10

**CONCLUSION**

For the reasons set forth above:

1. Defendant's motion to suppress evidence (Doc. No. 7) seized from her vehicle as well as her statements to officers is GRANTED; and

2. The matter is set for Status Conference on February 16, 2010, at 9:00 a.m. in Courtroom No. 27.[9]

IT IS SO ORDERED.

DATED: January 29, 2010.

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.criminal/collins0248oahsuppress

---

[9] The court will waive the defendant's appearance if a signed waiver is on file prior to the status conference.

11